IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MARCIE MEYER and MICHAEL MEYER,<br><br>Plaintiffs,<br><br>v.<br><br>CURRIE TECH CORP. and ACCELL NORTH AMERICA, INC.,<br><br>Defendants. | **8:16CV542**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on defendants Currie Tech Corp. ("Currie Tech") and Accell North America, Inc.'s ("Accell" and collectively, "Currie") "Daubert Motion in Limine" (Filing No. 108). Currie seeks to strike and exclude from evidence certain materials submitted by plaintiffs Marcie Meyer and Michael Meyer's ("Meyer" and collectively, the "Meyers") experts. The Meyers oppose (Filing No. 119) the motion. With jurisdiction under 28 U.S.C. § 1332(a)(1), the Court grants Currie's motion in part and denies it in part.[1]

## I. BACKGROUND

In February 2015, Meyer purchased a Currie Electro-Drive Kit 3 electric bike conversion kit ("kit") sold by Currie Tech on Amazon. In March, he installed the kit on his Stumpjumper mountain bike. On March 21, 2015, Meyer was severely injured in a bike accident. The Meyers blame the accident on the kit.

---

[1]The Meyers are both Nebraska citizens and allege damages of $1,032,000, excluding interest and costs. Currie Tech, an Accell subsidiary, is a Delaware corporation with its principal place of business in Simi Valley, California. Accell is a Delaware corporation with its principal place of business in Kent, Washington.

On November 11, 2016, the Meyers sued Currie in the District Court of Douglas County, Nebraska, alleging strict liability, negligence, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, and breach of representation. On December 12, 2016, Currie removed (Filing No. 1) the case to this Court based on diversity jurisdiction. *See* 28 U.S.C. § 1332(a).

The Meyers have designated three engineers as expert witnesses: Braden Kappius ("Kappius"), L. Scott Marshall ("Marshall"), and Eric Van Iderstine ("Van Iderstine").[2] On May 18, 2018, the Meyers timely produced reports containing opinions from all three experts. McSwain also produced two reports to rebut the evidence identified by Currie's experts. In September 2018, Currie deposed the Meyers's experts.

Currie moves "to strike and exclude from the evidence in this case any and all reports, opinions, and deposition testimony offered by" the Meyers's experts. According to Currie, those materials should be excluded because they are untimely, *see* Fed. R. Civ. P. 26(a)(2) and 37, unreliable, *see* Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-92 (1993), or both.[3] The Court discusses each issue in turn.

## II. DISCUSSION

### A. Timeliness and Disclosure

#### 1. McSwain's Supplemental Rebuttal Report

Rule 26(a)(2)(B) requires an expert witness to provide a written report that contains, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming

---

[2]Marshall and Van Iderstine both work for McSwain Engineering, Inc. and issued a joint report. The Court adopts the parties' practice of referring to them jointly as "McSwain."

[3]Currie states it does not challenge the qualifications of the Meyers's experts.

them."  As noted, the Meyers provided expert reports from McSwain and Kappius on May 18, 2018.  Currie disclosed its expert reports on July 2, 2018.

Under Rule 26(a)(2)(D)(ii), a party may present evidence "intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)."  But, "[a]bsent a stipulation or a court order," neither of which is present here, they must do so "within 30 days after the other party's disclosure."  *Id.*

In this case, McSwain issued a Rebuttal Report ("Rebuttal Report") on July 25, 2018.  Several weeks later, Van Iderstine provided a supplement to his rebuttal ("Supplemental Rebuttal Report") in a letter dated September 13, 2017.  In that report, Van Iderstine states, "An exemplary Mongoose Switchback bicycle was examined and measured to demonstrate the characteristics required for assembly of the exemplar Currie Tech Kit 3 front wheel and nuts, as shown in Enclosures 1 and 2."  After giving some detailed measurements, Van Iderstine opines,

> The fact that the absolute size of the exemplar Mongoose fork-end exceeded the Currie Tech dimension, yet did not have the clearance for the nut, reinforces my opinion that the Currie Tech Installation Guide designated a 25mm footprint for the nut and was prompting the reader/installer to ensure that there was proper clearance for the nut.

Van Iderstine explains that the Supplemental Rebuttal Report "includes additional findings and observations that were reached to a reasonable degree of engineering certainty" and that his conclusions in his initial report did not change.

Noting that Van Iderstine's additional opinions came long after the thirty-day deadline, Currie seeks to strike and exclude the Supplemental Rebuttal Report as an untimely disclosure under Rule 37(c)(1).  *See Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008 (8th Cir. 1998) ("[F]ailure to disclose in a timely manner is equivalent to failure to disclose.").  Rule 37(c)(1) authorizes the Court to sanction a party for failing to provide information or identify a witness as required by Rule 26(a), including by not allowing the

party "to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." "When fashioning a remedy, the district court should consider, *inter alia*, the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008). "[T]he exclusion of evidence is a harsh penalty and should be used sparingly." *Id.* (quoting *ELCA Enters. v. Sisco Equip. Rental & Sales*, 53 F.3d 186, 190 (8th Cir. 1995)).

Currie argues exclusion is appropriate in this case because Van Iderstine's late disclosure came shortly after the Meyers told the Court their expert disclosures were complete and opposed Currie's Motion to Extend Deadlines and Continue the Trial (Filing No. 71) because trial had already been delayed multiple times.[4] Currie reports that the Court's October 15, 2018, deposition deadline prevented Currie from rescheduling the McSwain engineers' September 21, 2017, depositions to allow sufficient time to review the new information. According to Currie, excluding the Supplemental Rebuttal Report is proper "because a continuance to allow a fair review, evaluation, and cross examination regarding these opinions would require postponement of an already much-delayed trial."

In their brief response to this issue, the Meyers do not challenge Currie's timeline or otherwise dispute that the Supplemental Rebuttal Report was untimely. They also do not give any reason for their noncompliance or explain the importance of Van Iderstine's additional opinion. Instead, they simply argue "the report adds no new information that prejudices" Currie because it "confirms" and "reinforces" Van Iderstine's previous opinion.

That argument cuts both ways. An untimely opinion that "confirms" and "reinforces" a timely opinion may not cause great prejudice, but it is also not so important

---

[4]Currie's motion to extend was granted and trial was continued again.

as to provide a compelling basis for excusing the very late disclosure and resulting prejudice. *See id.* While the delay in disclosing Van Iderstine's additional testing and one-page report may not have caused Currie substantial harm, the Court is unable to say it is harmless under the circumstances of this case. "In determining whether a severe sanction is justified, the district court may consider the resulting prejudice to the other party, any prejudice to the judicial system, and the need to deter similar misconduct in the future." *Bonds v. Dist. of Columbia*, 93 F.3d 801, 808 (D.C. Cir. 1996).

The Meyers have not given any justification for their untimely disclosure. In the Supplemental Rebuttal Report, Van Iderstine explained, "Due to time constraints of [him]self and laboratory personnel, this information was not available to be included in the [rebuttal] report." That explanation is neither sufficient to justify a delay of almost six weeks nor to deflect the need to deter similar delayed disclosures in the future.

In short, the Meyers's "failure to disclose [Van Iderstine's] supplemental testimony in a timely manner was neither substantially justified nor harmless, a continuance would have postponed a much-delayed trial, and the testimony was offered to prove a point upon which" other evidence may be "presented to the jury." *Wegener*, 527 F.3d at 692. The Supplemental Rebuttal Report is excluded.

### 2. Methodologies and Opinions First Disclosed at Depositions

Currie next argues McSwain's Engineering Investigation Report ("McSwain Report") and Rebuttal Report should be excluded because McSwain did not "disclose that they were utilizing the 'scientific method' or procedures set forth in the ASTM or NFPA as the methodology they relied upon in rendering their opinions for this case."[5] According to Currie, defense counsel were limited in their ability to prepare to depose Marshall and

---

[5]ASTM International ("ASTM"), formerly known as the American Society for Testing and Materials, issues standard practices for examining items involved in litigation (Filing No. 126-2). The National Fire Protection Association ("NFPA") likewise publishes a basic investigation methodology (Filing No. 110-15).

Van Iderstine because they did not have those standards available during cross-examination. *See*, *e.g.*, *Werth v. Hill-Rom, Inc.*, 856 F. Supp. 2d 1051, 1060 (D. Minn. 2012) ("The requirement to provide a report containing all bases for an expert's opinion is intended to permit opposing counsel to effectively prepare to depose the expert in advance of trial."). Currie likewise seeks to exclude Kappius's reports and opinions because he did not identify the methodology he used to render his opinions.

Alternatively, Currie asks "that the Court exclude the three opinions that McSwain divulged for the first time during their September 21, 2018 depositions: (1) the 'accident sequence', (2) the definition of 'manufacture', and (3) opinions concerning Meyer's mechanical abilities/aptitude." Currie also asks the Court to exclude "Kappius's opinion that a step in the axel [sic] was a mechanical defect that led to a loss of clamp force on the axel [sic]." According to Currie, Kappius gave that opinion for the first time at his deposition.

The Meyers counter that "their experts disclosed their opinions and the basis of their opinions in a timely fashion." Pointing to the parties' agreed inspection protocol and Van Iderstine's curriculum vitae, the Meyers argue their "experts used agreed upon methods" and adequately explained the standards used in their analyses. Assuming for the sake of argument that their disclosures were untimely, the Meyers again argue exclusion is unwarranted because Currie was not prejudiced by any "unfair surprise," as evidenced by Currie's extensive depositions of the Meyers's experts. As the Meyers see it, Currie's "discovery depositions of all experts afforded counsel [sic] to cross examine each expert about their opinions."

The Meyers's arguments largely miss the point. The Court agrees with Currie that the agreed inspection protocol in this case—which did not mention the ASTM or NFPA standards now at issue—did not relieve the Meyers's experts of their duty to timely disclose their methodology and fully explain the basis and reasons for their opinions. And Currie

aptly notes it could not as effectively depose the Meyers's experts without prior notice of their methodology. *See, e.g., Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008) (concluding a deficient expert report was not harmless because the deficiencies forced the other party to depose the expert "with little or no understanding as to what he would testify"). Not only was defense counsel unable to use the standards in cross-examination, they also did not have the benefit of reviewing those materials with Currie's experts in preparation for the depositions. The explanatory details provided in the expert affidavits the Meyers attached to their opposition brief only serve to illustrate the deficiencies in their initial disclosures. *See id.*

That said, the Court finds that the deficiencies Currie has identified do not warrant the "harsh penalty" of absolutely excluding all of McSwain's and Kappius's reports and opinions as Currie requests. *Wegener*, 527 F.3d at 692 (noting that a court should consider lesser sanctions "where exclusion of evidence was tantamount to dismissal of claims"). Though not harmless or substantially justified, the deficiencies in this case in disclosing McSwain's and Kappius's methodologies are far from a complete failure to disclose an expert witness or their opinions that might warrant wholesale exclusion at this stage.[6] *See Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 703 (8th Cir. 2018).

Currie's alternative request for more-targeted exclusions fares better. Taking Kappius's opinion that a step in the axle was a mechanical defect first, the Meyers do not dispute that Kappius did not include such an opinion in his report. That opinion, which was first disclosed at his deposition, is excluded. "Rule 26(a)(2) does not allow parties to cure deficient expert reports by supplementing them with later deposition testimony." *Ciomber*, 527 F.3d at 642.

---

[6]Ostensibly recognizing the severity of its requested sanction, Currie, without elaborating, states it understands "that a continuance to cure this prejudice is not available." Currie does not explain why it could not seek a lesser sanction, like an expedited supplementary deposition at the Meyers's expense. But because Currie has not asked for a lesser sanction (beyond its alternative argument), the Court will not impose one.

The same is true for Van Iderstine's deposition testimony regarding his broad definition of the term "manufacture" and any purported opinion Marshall might have regarding Meyer's proficiency as a bicycle mechanic. The Meyers make no argument for the former and say very little about the latter. As Currie points out, the Meyers rely on post-deposition affidavits from their experts to do the heavy lifting in their opposition brief (Filing No. 119). In his affidavit (Filing No. 125), Marshall disputes Currie's characterization of his testimony and denies opining Meyer was a proficient mechanic. Instead, Marshall states he was aware from case documents of Meyer's past work as a mechanic and that he "saw nothing in the physical evidence that would indicate that [Meyer] was not capable of properly installing the subject conversion kit or that he contributed to cause the subject incident." Van Iderstine similarly states in his affidavit (Filing No. 126) that he considered Meyer's bike-shop experience in forming his opinions.

In arguing McSwain's opinions are admissible, the Meyers rely heavily on those affidavits to show that McSwain "considered and ruled out other possible causes" of the accident. For example, the Meyers emphasize McSwain's conclusions that "[t]he evidence did not support a conclusion that" (1) "the brake pads were improperly aligned before the accident," (2) Meyer inadequately tightened the axle nut, and (3) "Meyer improperly installed Currie's kit with respect to removing metal from the bicycle's dropout or he lacked experience as a bicycle mechanic to complete the task." But neither the Meyers nor McSwain show where McSwain gave any pre-deposition opinion about Meyer's experience or expertise as a bike mechanic. Accordingly, Currie's motion to exclude opinions from McSwain "concerning Meyer's mechanical abilities/aptitude" is granted.

The Court reaches a different conclusion with respect to Currie's challenge to Van Iderstine's deposition testimony about the "accident sequence." The Court finds Van Iderstine's testimony was reasonably within the scope of the opinions disclosed in his report. Currie's request to categorically exclude Van Iderstine's opinion about the "accident sequence" is denied. If Currie thinks Van Iderstine's trial testimony on that topic

wanders too far from his report at trial, it remains free to make an appropriate objection at the time.

## B.    Admissibility

Currie next argues the Court should exclude Kappius's and McSwain's opinions under *Daubert* and Federal Rule of Civil Procedure 702 because the Meyers have not proven they are admissible. *See Daubert*, 509 U.S. at 589 (explaining the party offering expert testimony must prove its admissibility by a preponderance of the evidence). Under *Daubert* and Rule 702, the Court serves as a gatekeeper, "ensur[ing] that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. At the same time, the Court must not "invade the province of the jury, whose job it is to decide issues of credibility and to determine the weight that should be accorded evidence." *United States v. Vesey*, 338 F.3d 913, 917 (8th Cir. 2003).

Rule 702 "is one of admissibility rather than exclusion." *Lauzon v. Senco Prod., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (quoting *Arcoren v. United States*, 929 F.2d 1235, 1239 (8th Cir. 1991)). Under Rule 702, the opinion of an expert qualified by "knowledge, skill, experience, training, or education" is admissible if

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

> (b) the testimony is based on sufficient facts or data;

> (c) the testimony is the product of reliable principles and methods; and

> (d) the expert has reliably applied the principles and methods to the facts of the case.

In evaluating whether a witness's reasoning and methodology are scientifically valid, "the court should consider, among other factors (1) whether the theory or technique 'can be (and has been) tested'; (2) 'whether the theory or technique has been subjected to peer review and publication'; (3) 'the known or potential rate of error'; and (4) whether the

theory has been generally accepted." *Peitzmeier v. Hennessy Indus., Inc.*, 97 F.3d 293, 297 (8th Cir. 1996) (quoting *Daubert*, 509 U.S. at 593, 594). But those factors are not exclusive and may not apply in every case. *See Shuck v. CNH Am., LLC*, 498 F.3d 868, 874 (8th Cir. 2007).

The *Daubert* inquiry is flexible and case specific. *Am. Auto. Ins. Co. v. Omega Flex, Inc.*, 783 F.3d 720, 723 (8th Cir. 2015). Its objective "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 722-23 (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)). "Courts should resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758 (8th Cir. 2006). "Any weaknesses in the factual underpinnings of [an expert's] opinion go to the weight and credibility of his testimony, not to its admissibility." *Hurst v. United States*, 882 F.2d 306, 311 (8th Cir. 1989). "An expert's opinion should be excluded only if that 'opinion is so fundamentally unsupported that it can offer no assistance to the jury.'" *Synergetics, Inc. v. Hurst*, 477 F.3d 949, 956 (8th Cir. 2007) (quoting *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929-30 (8th Cir. 2001)).

### 1.    Kappius's Opinions

Currie contends "Kappius's opinions should be excluded under *Daubert* as he failed to utilize a reliable methodology." More specifically, Currie faults Kappius for (1) rendering "opinions on a broad range of topics" based on "a visual inspection of a failed bike" and photographs like "the expert in *Kuhmo Tire*"; (2) "not employing the same level of intellectual rigor" to his opinions that he applies in "his practice as an expert in bikes and engineering"; (3) failing to review manufacturing specifications and to conduct mechanical or stress testing; (4) cherry picking evidence; (5) ignoring "his own practices in manufacturing and selling after-market products for bicycles"; (6) relying on his cycling experience rather than testing and engineering design; (7) failing to rule out other possible

causes of the loss of clamp force; and (8) opining "that front wheel electric bike conversion kits are inherently dangerous" based solely upon his own limited experience with them.

Currie's criticisms of Kappius's methods are not entirely without merit. But having applied the relevant Rule 702 and *Daubert* factors to the facts of this case, the Court finds— with just one exception discussed below—that Kappius's methods are not so unreliable as to require the absolute exclusion of all his remaining opinions. *See, e.g.*, *Miles v. Gen. Motors Corp.*, 262 F.3d 720, 724-25 (8th Cir. 2001) (concluding a similar challenge to an expert's "knowledge and methodology goes to the weight that the jury accords the testimony rather than to its admissibility").

Currie takes exception to Kappius's reliance on his visual inspection of the bike, but even a cursory review of his report reveals that he relied on far more than that, including testing, measurements, photographs, video, and material gathered and produced by McSwain Engineering. The Court agrees with the Meyers that Kappius did not have to duplicate McSwain's work and could reasonably rely on such materials under the circumstances in this case. *See id.* (concluding an expert's failure to investigate the way the opposing party found most suitable did "not render [the expert's] methodology fallible" or require the "absolute exclusion" of the challenged testimony). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

As noted above, one of Kappius's challenged opinions does cross the line from shaky to inadmissible. Kappius opines that "[f]ront wheel electric bicycle kits are inherently dangerous." When deposed about the basis for that opinion, Kappius stated it is based upon his experience riding them, "it's not related to . . . the testing of them by any means, it's the feel of the bike . . . and the handling of the bike, and that's how I came to those conclusions." Kappius admitted he had only ridden one or two front-wheel electric

bikes in his life and did not document those experiences or the characteristics of the equipment he used. Kappius further admitted he did not do any research with respect to the market or accident history for front-wheel electric bikes or conversion kits and was "[n]ot sure of any way to . . . test the accuracy of [his] opinion." When pressed at his deposition, Kappius conceded "a front wheel motor kit can be done safely if certain considerations . . . are taken . . . into account, but in general, it is less safe." Kappius could not think of "a way to quantify how much less safe it is."

Whether viewed in terms of Kappius's admitted lack of specialized knowledge of and experience with front-wheel electric bike kits or the absence of sufficient facts and sound methods to support his conclusion, Kappius's unsupported opinion that "[f]ront wheel electric bicycle kits are inherently dangerous" is inadmissible under Rule 702. *See Robertson v. Norton Co.*, 148 F.3d 905, 907 (8th Cir. 1998) (concluding an expert opinion was not sufficiently reliable under *Daubert* where the witness lacked relevant knowledge and expertise and his opinion "was not supported by the kind of scientific theory, practical knowledge and experience, or empirical research and testing that permit assessment 'of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue'" (quoting *Daubert*, 509 U.S. at 592-93)); *accord First Union Nat'l Bank v. Benham*, 423 F.3d 855, 862 (8th Cir. 2005) (deciding exclusion is proper when a proffered expert lacks specialized training or knowledge or "personal experience in the area of testimony").

## 2.    McSwain's Opinions

Currie concedes "McSwain identified an accepted methodology, the scientific method prescribed by NFPA," but contends they "did not reliably apply that methodology to opine as to the cause of a bike accident." Currie argues McSwain failed to consider important empirical evidence, leaving a "large analytical gap" between the alleged defects in the kit and the "alleged bike accident and the injuries Meyer sustained." As Currie sees

it, McSwain should have done more calculations, testing, and modeling to evaluate their theory of how the accident happened and rule out other feasible hypotheses.

The Court again finds that Currie's criticisms go more to the weight and credibility of McSwain's remaining opinions than to their admissibility. Except as noted above, McSwain's opinions are "sufficiently reliable and relevant to assist the jury's determination of a disputed issue" in this case. *Bonner*, 259 F.3d at 929. If this case goes to trial, it will be up to Currie "to examine the factual basis for [McSwain's] opinion[s] in cross-examination." *Loudermill v. Dow Chem. Co.*, 863 F.2d 566, 570 (8th Cir. 1988). Currie's motion to exclude those opinions is denied.

### 3.     "Legal Conclusions"

"[E]xpert testimony on legal matters is not admissible." *See S. Pine Helicopters, Inc. v. Phx. Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003); *see also Cowden v. BNSF Ry. Co.*, 980 F. Supp. 2d 1106, 1118 (E.D. Mo. 2013) ("[A]lthough expert witnesses may 'embrace' an ultimate issue in their testimony, they may not state legal standards or draw legal conclusions by applying law to the facts."). In paragraph 42 of its Statement of Undisputed Facts, Currie states, "McSwain provides opinions that amount to legal conclusions," including that a "non-uniform machined surface on the axel [sic] was a manufacturing defect" and that the "Kit 3 was defective and unreasonably dangerous" as manufactured, marketed, and sold.

In response, the Meyers, citing *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995), acknowledge that "[e]xpert testimony that is not fact-based, but solely relies on a legal conclusion is inadmissible." But they argue the challenged opinions are not impermissible legal opinions because they are based on the facts and McSwain's "training and experience specific to manufacturing defects."

The Meyers's criticism of Currie's characterization of McSwain's opinions as impermissible "legal conclusions" may be well-taken. *See Am. Auto. Ins.*, 783 F.3d at 725

13

(explaining expert testimony "that squarely addresses the ultimate issue of whether" a product was unreasonably dangerous is generally permissible under Federal Rule of Evidence 740(a)"); *Rahmig v. Mosley Mach. Co.*, 412 N.W.2d 56, 69 (Neb. 1987) ("Whether a product is in a defective condition unreasonably dangerous to its user is, generally, a question of fact."). But the Court need not reach that issue at this time.

Currie does not make any argument regarding McSwain's purported "legal conclusions" in its brief or provide any supporting authority for the Court to rule on the issue before trial. To the extent Currie sought to exclude those opinions on that basis, it has waived the issue at this point. NECivR 7.1(a)(1)(A) ("A party's failure to brief an issue raised in a motion may be considered a waiver."); *accord Milligan v. City of Red Oak*, 230 F.3d 355, 360 (8th Cir. 2000) (declining to consider an issue a party had waived by failing to support "his assertion with any argument or legal authority").

Based on the foregoing, Currie's "Daubert Motion in Limine" (Filing No. 108) is granted in part and denied in part as set forth above.

IT IS SO ORDERED.

Dated this 19th day of December 2018.

BY THE COURT:

Robert F. Rossiter, Jr.
United States District Judge